My name is Bruce Murphy. The facts in this case, in a nutshell, is that in 1998, I had a telephone conversation with Bill O'Rourke, and he and I agreed at that time that for each client that I sent to him where there was a success in the case, I would get a 10% referral fee of their fee. For each client? For each client where there was a success, where there was a settlement or verdict, not if the case got thrown out on a motion. That was one thing that puzzled me about your papers. You said that for each client you got 10%. Well, you sent him three clients. Nonetheless, you're still only asking for 10 instead of 30. No, I misstated. I meant for client or clients. For a particular case? For a particular case. Okay. Apologize, sir. He denies that. He filed a declaration denying that. But also there is evidence that I had the same agreement with Sam Rubman and Steve Shulman of the New York office of Milberg White. Is this a suit for enforcement of the contract? Yes, sir. Why didn't you plead enforcement? I mean, all the papers in front of Judge Wilkin don't look like cause of action for breach of contract. Well, I thought the best way to get to it would be to ask the court to require Mr. Lorac to allocate my fee to me based on the contract. In charge of the money. You had an analogous suit, or I'll call it a claim, in Alameda County Court here not too long earlier. That's true. And the Superior Court judge said, well, if this is just a contract claim, go bring it independently as a contract claim. Don't come to me for fee allocation. That seems to me more or less what Judge Wilkin did in this case. Well, she didn't say that expressly. It may be of implication, but not expressly. My motion was to require Mr. Lorac to allocate from the funds, from the settlement funds, from his fee, from his 2.5 million fee, my 10 percent referral fee. Now, in the papers that you filed, it didn't become perfectly clear until your motion for reconsideration in front of Judge Wilkin that what you were claiming for was not the work that you performed, but rather merely for the referral. Is that the argument, that you just get the 10 percent based on the referral? Yes, sir. There was a pure referral agreement. I had no obligation to do any work at all. And in addition to that, there was no obligation that the client that I referred to him would be the lead plaintiff. That was not required. So my understanding of the deal that you contend you had is that for referring three clients, each of whom bought 100 shares of stock to the Lorac law firm, they then bring suit with a lot of other clients to consolidate various other suits, I think six in all. For you referring three clients, 100 shares each, you get $250,000. That's the deal? That's the way the deal works out in this case. See, the stock broke down in early December of 2000. And I'm supposed to think that maybe the Lorac firm, they're no dummies, or I'll say it this way, they had a way of looking out for their own interest, that they might have had comparable deals for all the other referrals. I mean, what's left over for them? Because they're the ones doing the work. 90 percent. But they've got five or six other lawsuits in the same case. I assume they're paying referral fees on that, too. No, no, no. What they're looking for is a starter case. They want to get a case file so they can put the notice out and attract all the clients. In this case, what happened was there were five copycat suits that were filed. They just copied what Lorac had and copied. And so the purpose of providing the client is so that the lawyer can put out a notice to attract clients with large positions so that they can be lead plaintiff, counsel for the lead plaintiff. Okay. If we were to affirm Judge Wilkin, could you file an independent contract suit? Probably, and I have. You probably could, and you have. I probably could, but I have in this case. You have filed. Plus. Where is that suit filed? That's in Florida. And what status does that suit have? That's in discovery. And when did you file that suit? Roughly a year ago. And I assume you've got a statute of limitations issue in that suit, too? There is a statute of limitations issue, yes. Was the suit filed after Judge Wilkin ruled against you in the district court? Yes. Okay, so you do have, and what success it has at this point I guess we don't know, but you've got a suit filed for breach of contract in which you're seeking $250,000? Yes, sir. So you don't really have a quantum merit claim? No, I don't, because that wasn't the deal. The deal wasn't that I do work or that the client I provide be the lead plaintiff. The deal was I will provide your client so you can file a suit. You can be the first one out of the block. You can put your notice out. You can attract other clients. So if the district court had jurisdiction at all, it would have to be a diversity action for breach of contract? I don't think so, no, sir. I think the district court has the order that will approve the fee had continuing jurisdiction for fee matters in it. So she gets her jurisdiction there. She awarded $2.5 million to Milberg Weiss, correct? And your dispute is what percentage you get out of the money that was otherwise awarded to Milberg Weiss. This is not a separate claim against the $10 million settlement fund that the district court would have to resolve because it would result in a diminution in the recovery for the successful plaintiffs, right? I would want her to allocate it out of Lorac's share. I wasn't looking for 25% for Lorac plus 10% for Murphy. In other words, I just wanted to have they wouldn't pay me, and I thought that was the best thing to go back to the court that approved the order, that approved the allocation, and ask that judge. But it's not really an allocation. The court made a determination that a reasonable attorney's fee in the case would be 25% of the $10 million recovery. So $2.5 million went to the plaintiffs' lawyers. And now your dispute is what portion of that $2.5 million do you get, and that's a straight breach of contract action as I see it. Well, they're cases both ways. I don't disagree with you. Well, the problem is that our cases talk about lawyers who actually performed work that furthered the settlement or bringing the case to settlement, and you concede in your answers to Judge Fletcher's question that you're not seeking quantum error recovery for any work that you did. It's just a straight finder's fee. Right. And that's okay under the California Professional Lawyers Act. No, no, no. I'm not questioning whether or not you have a claim that's recognizable under contract law in California. The problem I'm having is why a federal court needs to resolve what is a simple breach of contract claim to enforce a finder's fee agreement that you allege you had with the Milberg Weiss firm. Well, I thought about it, and it's a little bit quicker to be able to go in there. If you file a suit like a breach of contract suit, you're talking about New York. I understand it's more efficient. I was trying to get to it quickly. I understand that. I just wonder whether or not federal courts ought to be in the business of resolving disputes among the plaintiff's lawyers as to who gets a finder's fee and who didn't when they haven't done anything to further the settlement of the case before the district court. Well, talking about it had it not been for me, I was the one that discovered the case. No one filed for seven months. I got retained by clients, and we filed first seven months after the first drop, and then you get these five copycat suits. So I'm the one that discovered the case, and I got it started. And that's only worth something. But that's not what you're asking for. No, no, that's a backup position. You know, I don't really want that. I want the 250. But there's a backup position that she didn't consider, the fact that I discovered the case. How did these clients and this case come to your attention? They contacted me. Under what circumstance? I'm not sure. They're from Columbia, and we've had two Columbia housekeepers. And they go back to Columbia, and that's what the connection is. And Columbians are in the habit of buying 100 shares of? Your Honor, I don't know what Columbians are in the habit of doing. These three guys signed a certification that they bought 100 shares each. I've never been to Columbia, and I don't want to go. They've got kidnapping down there. Are they still in Columbia? As far as I know, yes, sir. Did you ever meet them? Did they ever come to the United States? No, sir. And there's something puzzling about this suit. They're entitled to some share of the recovery. At the time that Judge Wilkin entered her order, they had made no claim against the recovery. They claimed they got no notice of the settlement. Well, but there's correspondence between you and I'll call it the Lorac firm. It changes around a little bit, the remnants or the leftover or the successor, saying, well, we're quite willing to go forward and ask for an exception for the lateness and so on, but nothing happened. How come? Well, the reason is, under the allocation, they would have gotten $600, and they lost $25,000, and they were willing to roll the dice and try to go against Lorac for the $25,000. So are you telling me that they have made a conscious decision not to file for this? At this time, they may change their minds. And you've got documentation that they've made a conscious decision not to file for this? I have sent them several e-mails that they haven't responded. Frankly, I think they've lost interest. When they found out that all they're going to get is $600 if they accepted the allocation, I think they lost interest. They lost $25,000. Okay. Why don't we hear from the other side, and we'll give you a chance to respond. Thank you, Your Honor. Mr. Zetkoff. Good morning, Your Honor. May it please the Court. My name is Sandy Zetkoff from the Coghlan-Stoya firm here in San Francisco. Judge Tallman, Mr. Murphy has really two theories. His principal theory is, I've got a referral contract, I did no work. My second theory is, oh, yeah, I did some work. I thought he disclaimed his quantum merit claim. Well, he did. I would say that he just waved it in front of me. He not only did that, he did it on paper in response to my request for judicial notice of his lawsuit in Florida. If you look at page two of his opposition, he said, this is not a contract case. This is a PSLRA case. In fact, Judge Wilkin ruled that the contract was irrelevant. I guess we agree. The contract is irrelevant. Fees in a class action, regardless of arrangements between counsel, cannot be allocated to other than the lead counsel, unless something is done to assist the class in its recovery. Now, what did Mr. Murphy do? He said he read the filings. Well, under his own best case, independent holdings, Judge Scheinman's decision in New York. That non-lead counsel wrote a complaint. The causes of action from that complaint were incorporated in the lead counsel's complaint. Therefore, value was added to the lead plaintiff's action. And detailed time records were supplied to Judge Scheinman for that work. We have none of that here. There are no time records at all. No, this is just a straight referral fee. I want $250,000 because I delivered this case and these guys to you. Well, he has a subsidiary argument, but he has no evidentiary support for it. Judge Wilkin found there was no evidentiary support. I think you're pushing on an open door or beating on a dead horse or whatever the metaphor is. We're treating this partly because of what he said to us, but partly because of what's in his papers. This is a straightforward, I get it because I had a deal. I referred it to him. The deal was 10%. I want my $250,000. And on that question, the district court made no finding. There's nothing in the record one way or the other resolving that question. That question, Mr. Murphy in last July realized he maybe was in the wrong court and took it to Florida. I think Judge Wilkin's decision should be affirmed for all of the reasons we've been talking about. And if there are no other questions, I'll submit the matter. No questions. Thank you. Mr. Murphy, would you like a chance to respond? Yes, sir. I didn't mention when I was first up here. I got paid in 16 cases. And so you take the fact I was paid in 16 cases, in PSLRA cases, by LRAC, and then all of a sudden he signs a declaration that he didn't have such an agreement. You've got my evidence that there was such an agreement, and you've got the fact that Sam Rudman, who's now a named partner in the LRAC, Coughlin, it's Coughlin Firm, whatever the names are, he didn't file a declaration denying the arrangement. And then Steve Shulman, who was a partner in Milberg Weiss, he didn't file a declaration denying the arrangement. So the arrangement is there. It seems that that's very strong evidence. And the question is whether or not, I guess, the judge, the district court judge, should have required allocation based on that arrangement. Did you have any kind of written document? No, sir. No, it's all oral. And yet what happened in those other 16 cases, and I read your declaration, and I read, that is to say, I read the absence of declarations on the other side, that sounds like evidence that might be relevant in the Florida suit. Well, it does. Yeah. Okay. Okay. Thank you very much. Sorry to have put you through the trouble of coming all the way from Florida. I hope you enjoy your stay in San Francisco. Well, this is a wonderful city, but this courthouse building is so impressive. You're welcome back any time. With all this marble and everything, I'm really impressed. It's nice being here, gentlemen. Okay. Thank you. Thank you. Thank you. Test systems is now submitted for decision.
judges: Nelson, Fletcher, Tallman